STATE of Minnesota, Respondent,

v.

Elmer M. LALLI, Appellant.

Nos. C2–82–1218; C5–82–1388.

Supreme Court of Minnesota.

Sept. 23, 1983.

John Remington Graham, Brainerd, for appellant.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Stephen C. Rathke, County Atty., Brainerd, for respondent.

TODD, Justice.

Defendant was found guilty by a district court jury of six counts of bribery and six counts of theft, Minn.Stat. §§ 609.42, subd. 1(2), 609.52, subds. 2(1), 3(3)(d) (1982). At the sentencing hearing the prosecutor moved for (a) an order combining the six counts of bribery, each of which covered a different period, into one count covering the period from November 1, 1978 through August 31, 1981, and (b) sentencing only on that count. Defense counsel did not oppose this motion and the trial court granted it. The presumptive sentence for the offense (which is a severity level IV offense) by a person with defendant's criminal history score (zero) is 1 year and 1 day stayed. The trial court departed both durationally and dispositionally, imposing an executed prison term of 18 months. The court also fined defendant $3,000. Defendant did not order a transcript of the trial and recognizes therefore that he cannot challenge the sufficiency of the evidence of his guilt or the fairness of his trial. However, he has provided us with a copy of the transcript of the grand jury proceedings and he contends that his conviction should be reversed on the ground that the indictment was not based on sufficient evidence. He also ar-

gues that his sentence was incorrect. We affirm.

1. Defendant's first contention is that there was insufficient evidence for the grand jury to indict and that therefore his subsequent conviction must be vacated.

(a) Defendant admits that one of the items of evidence before the grand jury was a confession he made to a deputy sheriff during a noncustodial interrogation on September 1, 1981. However, he contends that there was insufficient evidence independently establishing the *corpus delecti* and that without such other evidence there was insufficient evidence to indict.

The requirement that the *corpus delecti* be established by evidence independent of the confession is codified at Minn.Stat. § 634.03 (1982), which provides that "A confession of the defendant shall not be sufficient to warrant his conviction without evidence that the offense charged has been committed." The rule is discussed in E. Cleary, McCormick on Evidence § 158 (2d ed. 1972).

The test for the sufficiency of evidence to indict is set forth in Minn.R.Crim.P. 18.06, subd. 2, which provides:

> The grand jury may find an indictment when upon all of the evidence there is probable cause to believe that an offense has been committed and that the defendant committed it. Reception of inadmissible evidence shall not be grounds for dismissal of an indictment if there is sufficient admissible evidence to support the indictment.

Defendant erroneously contends that this is merely a "rephrasing" of the since-repealed Minn.Stat. § 628.03, which provided that the grand jury could indict if all the evidence "would, if unexplained and uncontradicted, warrant a conviction by a trial jury." The comment to the rule states that the provision that an indictment may be found upon probable cause "changes" section 628.03. Specifically, the rule "substitutes the constitutional standard of probable cause, by which the validity of complaints are measured." 7 H. McCarr, Minnesota Practice, Criminal Law and Procedure 482 (1976). *And see State v. Terrell,* 283 N.W.2d 529 (Minn.1979).

■ Whether the *corpus delecti* requirement applies even at the grand jury stage of proceedings is an issue that we need not and do not address, because even if the requirement does apply at the grand jury stage, it was satisfied here by the state's evidence independently establishing probable cause to believe that the crimes of theft and bribery had been committed. Specifically, the state's evidence established (a) that a scrap dealer named Ross frequently picked up large amounts of valuable scrap electrical wire which was owned by the Brainerd Water and Light Department, (b) that defendant, who was the superintendent, was usually present when this occurred, (c) that after the wire was loaded onto Ross' truck Ross often would "disappear" with defendant for a few minutes or hand cash to another employee of the department, (d) that the city had no record of having been paid by Ross for most of the scrap he picked up, and (e) that there was another scrap dealer, who always paid by check, who wanted to buy more scrap wire from the city but kept being rebuffed by defendant. In conclusion, we believe that there was sufficient evidence to support the indictment.

(b) Because of this conclusion, we do not need to address the issue of whether a conviction based on sufficient evidence should be reversed if the indictment was not based on sufficient evidence.

■ 2. Defendant's other contention is that the trial court erred in departing dispositionally and durationally from the presumptive sentence.

Three of the six counts of bribery related completely to conduct that occurred before May 1, 1980, the effective date of the Guidelines. The court therefore could have sentenced defendant to the statutory maximum of 10 years on each of these three counts, without regard to the Guidelines and without violating section 609.035. *See State v. Eaton,* 292 N.W.2d 260 (Minn.1980).

The agent who prepared the sentencing worksheet did not propose sentencing without regard to the Sentencing Guidelines but did use the *Hernandez* method of computing defendant's criminal history score. *See Minnesota Sentencing Guidelines and Commentary*, II.B.101. (1982) and *State v. Hernandez*, 311 N.W.2d 478 (Minn.1981). That is, the agent assigned defendant a zero criminal history score for the first offense of bribery, one for the second, two for the third, etc. This gave defendant a criminal history score of five for the last offense of bribery. The presumptive sentence for a severity Level IV offense by a person with a criminal history score of five is an executed prison term of 32 (30–34) months in prison.

The prosecutor moved at the sentencing hearing to have all six counts of bribery consolidated into one count and have defendant sentenced for bribery. The trial court, without objection from defendant, granted the motion. This meant that the *Hernandez* method could not be used and that defendant's criminal history score was zero. The presumptive sentence therefore was 1 year and 1 day stayed. The prosecutor then moved for a dispositional departure and for a double durational departure. The trial court granted the motion but limited the durational departure to one and one-half rather than two times the presumptive sentence.

The trial court's departure report stated: The reason for departure from the guidelines in both a dispositional and durational manner are substantially intertwined in this instance.

The evidence at the trial does support a finding that the offense was a major economic offense in that it was a series of illegal acts (committed by other than physical means) involving concealment and guile to obtain money for the defendant over a three-year period of time to the detriment of the community which he purported to serve.

In addition, the defendant used his position as supervisor of the Brainerd Water and Light Department to facilitate the commission of the offense.

The testimony at the trial would sustain a finding that the defendant had accepted bribes on literally dozens of occasions in amounts varying from $20 to $500 and that in so doing, the defendant subverted respect for the authority of his employer.

The logic of *State v. Evans*, 311 N.W.2d 481 (Minn.1981), generally bars use of one set of aggravating circumstances as justification for both a durational departure and a departure with respect to consecutive service in the same case, but clearly does not bar use of both a dispositional and a durational departure in the same case or a dispositional departure and one with respect to consecutive service in the same case.

In this case the trial court relied on the fourth of the five aggravating factors listed in Minnesota Sentencing Guidelines and Commentary, II.D.2.b. (1982), *i.e.*, the one dealing with major economic offenses.[1] Defendant contends that this factor does not apply but he has not provided us with a transcript of the trial or pointed to anything in the presentence investigation re-

---

1. (4) The offense was a major economic offense, identified as an illegal act or series of illegal acts committed by other than physical means and by concealment or guile to obtain money or property, to avoid payment or loss of money or property, or to obtain business or professional advantage. The presence of two or more of the circumstances listed below are aggravating factors with respect to the offense:

(a) the offenses involved multiple victims or multiple incidents per victim;

(b) the offense involved an attempted or actual monetary loss substantially greater than the usual offense or substantially great-

er than the minimum loss specified in the statutes;

(c) the offense involved a high degree of sophistication or planning or occurred over a lengthy period of time;

(d) the defendant used his or her position or status to facilitate the commission of the offense, including positions of trust, confidence, or fiduciary relationships; or

(e) the defendant has been involved in other conduct similar to the current offense as evidenced by the findings of civil or administrative law proceedings or the imposition of professional sanctions.

port that would support his argument. The record we do have indicates that reliance on this factor was justified.[2]

Affirmed.

---

**2.** Specifically, the record indicates the presence of circumstances (a), (c) and (d)—that is, three of the five circumstances listed. The court could have departed even if only two of the five were present.