STATE of Minnesota, Respondent,

v.

Daniel Anthony MARTINEZ, Appellant.

No. 82–12.

Supreme Court of Minnesota.

May 19, 1982.

Joseph Kaminsky, Minneapolis, for appellant.

Warren Spannaus, Atty. Gen., St. Paul, Tom Foley, County Atty., Sherry A. Bakken and Steven C. DeCoster, Asst. County Attys., St. Paul, for respondent.

AMDAHL, Chief Justice.

This is a sentencing appeal. Defendant pled guilty in district court to criminal sexual conduct in the first degree, Minn.Stat. § 609.342(d) (1980). The presumptive sentence for an offense of this severity level (VIII) when committed by a person such as defendant with a criminal history score of zero[1] is 43 months in prison, with the trial court being permitted to impose a term of anywhere from 41 to 45 months without being required to justify it. The trial court imposed a sentence of 150 months in prison.[2]

In *State v. Evans*, 311 N.W.2d 481 (Minn. 1981), we held that in cases in which upward durational departure is justified the length of the sentence imposed *generally* may not exceed twice the length of the presumptive sentence. However, we also noted in *Evans* that there might be rare cases in which more than a double durational departure would be justified. One such case was *State v. Stumm*, 312 N.W.2d 248 (Minn.1981), where we held that the absolute vulnerability of the 2-year-old victim, the cruelty of the defendant and his indifference to the child's medical needs after the death-producing blows were struck, justified more than a doubling of the presump-

---

1. Defendant, age 23 at the time of the offense, had no criminal or delinquency history whether felony, gross misdemeanor, misdemeanor or juvenile adjudications. He is a high school graduate and served over 3 years in the United States Army.

2. For purposes of comparison, we note that the presumptive sentence for criminal sexual conduct in the first degree by one with a criminal history score of six is 132 months, that the presumptive sentence for third-degree murder by one with defendant's criminal history score of zero is 96 months, and that the presumptive sentence for second-degree murder by one with defendant's criminal history score is 116 months.

tive guideline sentence. The sentencing in the instant case preceded our decisions in both *Evans* and *Stumm*. We agree with the trial court that durational departure was justified but, pursuant to our opinion in *Evans*, we reduce the defendant's prison term from 150 months to 90 months, which is twice the maximum presumptive sentence.

The offense in question occurred in April 1981 when defendant, in an intoxicated state, unlawfully entered a St. Paul home occupied by a woman and her daughters. Defendant woke the woman, displayed a knife, and told her she had to cooperate if she did not want to get cut. During the ensuing sexual assault, which lasted around 2 hours, defendant held the knife next to the victim and threatened to commit a sexual assault upon one of her daughters if she did not do as she was told. We need not detail all the acts committed by defendant. It is sufficient to say that he forced her to submit to various types of sexual contact and penetration, culminating with ejaculating onto her body. After defendant left, the victim called the police, who arrested defendant just a short distance away as he was running from the area.

Defendant was originally charged with three counts of criminal sexual conduct in the first degree, three counts of criminal sexual conduct in the second degree, and one count of burglary. Pursuant to a plea agreement, he pled guilty to one count of criminal sexual conduct in the first degree, and all other charges were dismissed. Following his guilty plea, he was ordered to report to the State Hospital at St. Peter for tests. All the reports from the people who examined him at St. Peter were negative, basically because defendant maintained he could not believe he had done what he had pled guilty to doing and would not admit he had any sexual problems necessitating treatment. The report to the trial court from St. Peter was that defendant could not be treated there and that incarceration was the appropriate way to deal with him.

The presentence investigation report relied heavily upon the report from St. Peter and recommended that the duration of defendant's prison term be increased from that of the presumptive sentence to 65 months.

The trial court, in a formal departure report, cited the vulnerability of the victim and the unusual cruelty of the assault.

Defendant's contention that the departure was unjustified because the trial court failed to file timely a written departure report is without merit. Even if the report was filed late (and it does not appear that it was), the court's statements on the record at the time of sentencing adequately explained the court's reasoning.

Defendant's main arguments are that there were no aggravating circumstances present which would justify departure and that the departure was excessive in scope.

In *State v. Erickson*, 313 N.W.2d 16 (Minn.1981), the rape was committed upon a woman in the presence of her 21-month-old child. While not stating that the "particular vulnerability" exception to presumptive sentences would never be applied when the victim was rendered more vulnerable by the presence of her child, our opinion did state that that exception applies only when the *victim* of the crime is particularly vulnerable. *Id.* at 18. Most of the factors cited by the state in support of its argument that the victim was particularly vulnerable in this case are factors which do not distinguish the vulnerability of this rape victim from the vulnerability of most other rape victims. Most rape victims are, at the time they are raped, vulnerable in some way and rapists use that vulnerability to facilitate the commission of the offense. The legislature, to a great extent, has considered the vulnerability of the victims of rapes in determining the seriousness to attach to rape offenses in general and in distinguishing rape offenses by degree. For example, use of a knife or use of threats of death obviously renders a victim more vulnerable, and the legislature has taken such factors into account. Even threats to harm a child or some other person are generally taken into account in the definitions of "coercion" and "force." Minn.Stat. § 609.341, subds. 3, 14 (1980). *See also* Minn.Stat. § 609.342(c). Further, subdivision (d) of section 609.342 does not require that the defendant use the

knife or threaten to use it *on the victim* in order to cause her to submit; all that is required is that the defendant use the knife or threaten to use it in some way to cause her to submit. Notwithstanding this, each case, of course, must be considered on its own.

We need not decide whether the facts cited by the state made the victim in this case "particularly vulnerable" because it is clear to us that the defendant in this case committed the offense in a "particularly cruel" way. Cases dealing with this factor include *State v. Fairbanks*, 308 N.W.2d 805 (Minn.1981), and *State v. Schantzen*, 308 N.W.2d 484 (Minn.1981). Although defendant's conduct was not different *in kind* from that of many rapists, it was sufficiently different *in degree* to justify the determination that defendant acted with "particular cruelty." But this is not the rare case which is exemplified by *State v. Stumm*, 312 N.W.2d 248 (Minn.1981), in which more than a double durational departure is justified. Accordingly, defendant's sentence is reduced from 150 months to 90 months, which is twice the maximum presumptive sentence.

Affirmed as modified.

KELLEY, Justice (dissenting).

I respectfully dissent.

Defendant was adjudged guilty on his plea of criminal sexual conduct in the first degree. Minn.Stat. § 609.342(d) (1980).[1] The legislature provided for a sentence in that statute for this crime up to 20 years imprisonment. Under the Minnesota Sentencing Guidelines, the presumptive sentence is 43 months imprisonment. Under the Guidelines, if the trial court imposes a sentence of more than 45 months, the judge must file a departure statement. The trial court sentenced the defendant to 150 months in prison and filed a departure

statement. In my opinion, the departure was justified and the sentence imposed should stand.

It is unnecessary to detail the egregious, outrageous and brutal criminal assault upon the victim in further detail than set forth in the majority opinion. The majority agrees departure was justified; but I part with the majority on the extent of the permitted departure. While we did hold in *State v. Evans*, 311 N.W.2d 481 (Minn.1981) that a trial judge may generally make an upward departure not to exceed twice the length of the presumptive sentence, we noted there and in *State v. Stumm*, 312 N.W.2d 248 (Minn.1981) that in rare cases more than a double departure in duration of sentence might be justified. In my view, this is such a rare case.

The victim was a young mother in the security of her home with her three teenage daughters. The defendant broke into her home, awakened her, compelled her to engage in the most degrading sexual perversions for a period of 2 hours, and threatened her not only personally with a knife but also that if she did not submit, he would go upstairs and do the same thing to her teenage, sleeping daughters. In my view, the trial court correctly characterized defendant's actions as constituting "a horrendous crime" in which the victim was subjected to "great cruelty." Moreover, even after defendant completed an in-patient alcohol treatment at St. Paul Ramsey Hospital and after he had entered a plea of guilty, he continued to deny his act and to refuse to admit he had any sexual problems necessitating treatment.

The sentence, as modified by this court today, may result in defendant being released as early as 5 years from the date of its imposition. The sentence as imposed by the trial judge would provide a minimum of 8⅓ years.[2] Considering the egregious con-

---

1. Originally, the defendant was charged with three counts of criminal sexual conduct in the first degree, three counts of criminal sexual conduct in the second degree and one count of burglary. Pursuant to a plea agreement entered into by his counsel and the prosecutor, defendant pled guilty to one count of criminal

sexual conduct in the first degree and the other charges were dismissed.

2. For each 2 days "good time" spent in confinement, the sentence is reduced by 1 day. In effect, this means that the sentence actually imposed can result in a sentence of only two-

duct here involved, the cruelty and coercion practiced by the defendant, the policy of the legislature in recognizing this crime as one of the most serious in the criminal code, I would defer to the trial court and affirm the sentence imposed.

YETKA, Justice (dissenting).

I join in the dissent of Mr. Justice Kelley.

thirds of its length. Minn.Stat. § 244.04 (1980).